IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM DUNCAN,

      Petitioner,

v.                                                    CASE NO. 3:18-cv-2099-MCR-GRJ

SEC'Y, FLA. DEP'T OF
CORR.,

      Respondent.

_____/

## **REPORT AND RECOMMENDATION**

Petitioner initiated this case on September 11, 2018 when he filed his

Petition for Writ of Habeas Corpus.[1]  ECF No. 1.  In his Petition, Petitioner

challenges his 2010 Escambia County, Florida convictions and sentences

for burglary and arson, for which Petitioner is serving concurrent sentences

of twenty-five (25) years.  *Id.* at 1. Respondent filed a response in

opposition, together with relevant portions of the state-court record.  ECF

No. 14. Petitioner filed a second amended reply memorandum, attempting

to address Respondent's arguments. ECF No. 28.

---

[1] Although the Court's docket reflects a filing date of September 17, 2018, the "mailbox rule" applies because Petitioner is incarcerated and proceeding *pro se*.  *Romanes v. Sec'y, Dep't of Corr.*, 621 F.Supp.2d 1249, 1264 n.10 (M.D. Fla. 2008) (citing *Houston v. Lack*, 487 U.S. 266 (1988); *Adams v. United States*, 173 F.3d 1339 (11th Cir. 1999)).

Upon due consideration, it is respectfully **RECOMMENDED** that the Petition, ECF No. 1, be **DENIED**.[2]

## <u>BACKGROUND</u>

The procedural history of this case is established in the state court records appended to Respondent's response.  ECF No. 14-1 to 25. Petitioner was charged in an Information in Escambia County, Florida with one count of burglary of a dwelling or structure (in violation of Fla. Stat. §§ 810.02(1) and (2)(c)(2)) and one count of arson (in violation of Fla. Stat. § 806.01(1)(a)). *Id.* at 23.

The facts are as follows: In the early evening of January 24, 2010, Escambia County Fire personnel responded to a structure fire in Pensacola, Florida and found a single-family wood-framed home ablaze. ECF No. 14-1 at 25 (record on first direct appeal). Finding no natural or accidental explanation for the fire, firefighters requested that the State Fire Marshal Bureau of Fire and Arson (SFM/BFA) investigate.  *Id.*  The SFM/BFA determined that the fire was caused by an open flame, originating in the living room.  *Id.*  The fire caused damage to the interior of the home in excess of $10,000 and was intentionally set. *Id.* at 23 and 25.

---

[2] The Court has determined that an evidentiary hearing is not warranted because the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

SFM/BFA contacted the owner, who was not at home at the time of the fire. *Id.* at 25.  The homeowner stated that one of the female occupants of the home had argued with a person named "Billy" before everyone left the home that night.  *Id.*

Two days after the fire, SFM/BFA interviewed several eyewitnesses who placed Petitioner at the scene minutes before the fire broke out.  Two neighbors saw Petitioner enter the home in question and remain inside for about two to three minutes before he departed by taxi. ECF No. 14-1 at 26*.* The taxi driver identified Petitioner as the person he picked up at the scene on the date and at the time in question. *Id.*

Petitioner was arrested and charged with two first-degree felonies (one count of burglary of a dwelling and one count of arson). *Id.* at 23. On February 25, 2010, the State filed Notice that it intended to seek Habitual Felony Offender (HFO) sentencing against Petitioner.  *Id.* at 34.  On April 19, 2010, Petitioner filed a *pro se* motion, asking the court to allow him to represent himself and to "dispense" with his public defender.  ECF No. 14-1 at 74-76.  In the motion, Petitioner states: "I wish to make a clear and unequivocal declaration that I desire to dispense with assistance of Public Defender [in this case]. This defendant will knowingly state it is the intention

of the foregoing litigant to represent oneself personally per *Faretta vs. California*…422 U.S. 806, 95 S.Ct. 2525." *Id.* at 75.

The court held a *Faretta* hearing contemporaneous with the filing of the motion, and the public defender appeared on Petitioner's behalf. *See* ECF 14-1 at 35-73. At the hearing, the court questioned Petitioner extensively about his reason for wanting to represent himself, his mental state, his understanding of the seriousness of the charges, and his understanding of his possible sentence as an HFO if convicted. *Id.* The court explained that proceeding to trial without the assistance of counsel presented enormous challenges, and Petitioner agreed that it would put him at a "serious disadvantage." *Id*. at 50. Nonetheless, Petitioner told the court that he understood "[t]he procedural problems spawned by the absolute right to self-representation will far outweigh any advantage the defendant may feel he has gained by choosing to represent himself. That's at the end of the *Faretta*[3] review by the Supreme Court. I understand that." *Id.* at 52.

---

[3] In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that a criminal defendant has a right to self-representation under the Sixth Amendment to the United States Constitution, where the trial court concludes that the defendant "knowingly and intelligently" waives his right to counsel. *Id.* at 835.

The court further warned Petitioner that if he represented himself and was convicted, he could not claim on appeal that he was due a new trial because of his own lack of legal knowledge, nor could he bring an ineffective assistance of counsel claim since he was "self-represented." ECF No. 14-1 at 55-56. Petitioner responded, "Yes, sir, I understand." *Id*. at 56.  After lengthy examination, the court found that Petitioner understood the risks and disadvantages of self-representation and that Petitioner demonstrated that he "knowingly and intelligently" waived his right to counsel. *Id*. at 64.  Nevertheless, the court ordered the public defender to represent Petitioner as "standby counsel" in the event Petitioner changed his mind, or the court later revoked his right to represent himself. *Id*. at 61-65.

Petitioner thereafter represented himself during a two-day jury trial. ECF No. 14-2 (trial transcript). Prior to jury selection, the court once again offered Petitioner the services of the public defender and Petitioner declined.  *Id*. at 4.  In the State's case-in-chief, eyewitnesses testified to the following: (1) that Petitioner entered the burned home minutes before the fire broke out, ECF No. 14-2 at 68-69, 80-81; (2) that Petitioner was the only person at the scene minutes before the fire broke out, *id*. at 80, 88; (3) that Petitioner threatened to do harm to the people living at the burned

home, *id*. at 78-79[4]; (4) that Petitioner stated he was "glad" the house burned down, *id*. at 71, 74; and (5) that Petitioner admitted to neighbors "I did it, my heart hurts. I did it, my heart hurts." *Id.* at 81.  The State fire marshal also testified that the fire was intentionally set. *Id.* at 122.  The homeowner testified that he did not give Petitioner permission to enter his home on the day of the fire.  *Id.* at 49.

Petitioner's lone witness was the fire marshal, whom he questioned in an attempt to impeach the credibility of both the homeowner and the female occupant with whom he had argued.  *Id.* at 171.  Petitioner also questioned the fire marshal about Petitioner's own statements regarding his whereabouts on the night of the fire. *Id.* The jury found Petitioner guilty on both charges, and the court sentenced him as an HFO to twenty-five (25) years for each offense, with the sentences to run concurrently.  ECF No. 14-1 at 171-72, 258-59.

Petitioner took three direct appeals. On the first direct appeal, Petitioner made two challenges. First, he argued that the trial court erred in not holding a *Nelson* hearing, as Petitioner's *Faretta* motion was really a request for substitute counsel and not a request for self-representation.

---

[4] A witness testified that Petitioner told a female occupant of the home that if "he didn't have a place to stay, then she wouldn't either."  ECF No. 14-2 at 79.

ECF No. 14-3 at 3. Second, he argued that the sentencing court erred by not renewing the offer of counsel prior to sentencing.  *Id.*  The Florida First District Court of Appeal (1st DCA) upheld both convictions but remanded the sentences because the trial court had not renewed its offer of counsel prior to sentencing.  *See Duncan v. State*, 76 So.3d 1119 (Fla. 1st DCA 2011) (per curiam) and ECF No. 14-12 at 42. On remand, Petitioner requested the assistance of counsel for sentencing. ECF No. 14-1 at 72. After some "competency issues" described at ECF 14-7 at 65-66, the trial court found Petitioner competent to be sentenced.  *Id*. at 72. The court imposed the same 25-year sentence with credit for time served. *Id*. at 84, 92-95.

In his second direct appeal, Petitioner argued that the trial court erred in finding Petitioner competent for sentencing because two medical doctors found him to be incompetent. ECF No. 14-10. Petitioner also argued that the sentencing court erred in sentencing Petitioner to the same 25-year sentence without being sufficiently familiar with the case. *Id.* The State conceded error on the first issue, rendering the second issue moot. *Id.* 8. The 1st DCA reversed the sentences and ordered another competency hearing.  *See Duncan v. State*, 115 So.3d 1121 (Fla. 1st DCA 2013) (per curiam) and ECF 14-12 at 58-59.  On remand, Petitioner was evaluated

and found to be competent for sentencing.  *Id*. at 68.  He was sentenced to 25-years imprisonment for each offense, to run concurrently with credit for time served.  *Id.* at 69-70, 77-71.  In his third direct appeal, appellate counsel filed an *Anders* brief. ECF No. 14-13.  Petitioner was permitted to file a *pro se* brief, which he failed to do. ECF No. 14-15 at 3.  The 1st DCA affirmed *per curiam*. ECF No. 14-16 at 2.

### A. State Habeas Petition

In his state habeas petition filed under Fla. R. Crim. P. 9.141(d), Petitioner argued that he was denied his Sixth Amendment right to effective assistance of appellate counsel. He advanced  five grounds in support of his claim:  (1) counsel failed to argue that the trial court erred by conducting a *Faretta* hearing rather than ordering a competency evaluation; (2) counsel failed to attack the trial court's failure to address seven *pro se* pretrial motions; (3) counsel failed to include the transcript of the hearing on the *Nelson* motion in the record on appeal; (4) counsel failed to include the transcript of the hearing on Petitioner's motion to represent himself in the record on appeal; and (5) counsel failed to argue that the transcripts showed the trial court failed to renew an offer of counsel immediately prior to trial.  ECF No. 14-17 at 4-9.

The 1st DCA denied the petition on the merits without a published opinion in *Duncan v. State*, 192 So.3d 681 (Fla. 1st DCA 2016) and ECF 14-20 at 2.

### B. Postconviction Proceedings

Petitioner thereafter filed a motion for postconviction relief under Fla. R. Crim. P. 3.850.  ECF No. 14-21; *see also* Documents Filed Under Seal ("Sealed Documents") 14-25 at 85-128.  In his amended motion, Petitioner alleged that counsel was constitutionally deficient on four grounds: (1) counsel failed to have Petitioner's competency evaluated to determine whether he was competent to stand trial, *id*. at 184; (2) counsel failed to investigate a defense theory of "not guilty by reason of insanity," *id*. at 188; (3) counsel stipulated to Petitioner's competency when he was sentenced on remand, *id.* at 192; and (4) counsel failed to object to the sentencing court's imposition of the "same sentence as before" on remand.  *Id.* at 196. The postconviction court denied Petitioner's motion in an order without conducting an evidentiary hearing. *Id*. at 246-54. Petitioner appealed.  The 1st DCA affirmed in *Duncan v. State*, 249 So.3d 599 (Fla. 1st DCA 2018) (per curiam) (decision without published opinion) and ECF No. 14-24 at 2.

Applying *Strickland*, the postconviction court found that Petitioner's claim that counsel's failure to request a competency hearing during the

*Faretta* hearing prejudiced him was refuted by the record.  The court reasoned that "[a] trial court is not obligated to conduct a competency hearing if there are insufficient grounds to believe that the defendant is incompetent."  *See Cotton v. State*, 177 So.3d 666, 668 (Fla. 1st DCA 2015) (citation omitted)." ECF No. 14-25 Sealed Documents at 248. "To satisfy the deficiency prong [of *Strickland*] based on counsel's handling of a competency issue, the postconviction movant must allege specific facts showing that a reasonably competent attorney would have questioned competence to proceed. . . . Conclusory allegations of incompetency are not enough to warrant an evidentiary hearing."  *Thompson v. State*, 88 So.3d 312, 319-20 (Fla. 1st DCA 2012). ECF No. 14-25 Sealed Documents at 249.

After reviewing the transcript from the *Faretta* hearing in its entirety, the postconviction court found nothing to evidence that Petitioner was incompetent at the time. As such the Court concluded that counsel was not constitutionally deficient in failing to ask for a competency hearing. *Id.* at 250.  The court also concluded that Petitioner failed to put forth evidence demonstrating that he was not able to "assist counsel" or "understand the charges" during the *Faretta* hearing.  ECF No. 14-25 Sealed Documents at 250.   Moreover, standby counsel was under no obligation to request a

competency hearing. *Id.*  Thus, Plaintiff was not entitled to relief on this
ground.  *Id*.

In rejecting Petitioner's second claim for ineffective assistance of
counsel, the postconviction court concluded that because Petitioner
represented himself at trial, he had no ineffective assistance claim as "he
bore the entire responsibility for his defense." *Id*. at 251.

With respect to Petitioner's third claim, the court noted that the court
had a competency report before it at the time of sentencing, stating that
Petitioner was competent to be sentenced. *Id.* at 252.  A competency
hearing, moreover, is called-for after an accused has been adjudicated
incompetent, which was not the case here. *Id*. Thus, counsel's failure to
request a full competency hearing at sentencing was not deficient. *Id*. at
253.

As to Petitioner's final claim of ineffective assistance of counsel, the
postconviction court concluded that counsel's failure to object to the "same
sentence as before" was not deficient performance and did not prejudice
Petitioner.  *Id.* The court reasoned that the same information Petitioner
argued counsel should have provided to the court was, in fact, before the
court at the time of sentencing.  *Id*.

*C. Federal Habeas Proceedings*

In the instant Petition, Petitioner asserts seven grounds for federal habeas corpus relief. ECF No. 1.  In Ground One, he argues that the trial court erred in failing to conduct a *Nelson* hearing. *Id.* at 6. In Grounds Two, Three, Four and Seven, he argues that he was deprived of his Sixth Amendment right to effective assistance of counsel.  *Id.* at 8, 9, 11, 21. In Ground Five, he argues that the trial court erred by failing to renew an offer of counsel before all pretrial hearings and during the evidentiary portion of trial. *Id.* at 19. And, in Ground Six, he argues that the sentencing judge at resentencing erred by imposing the same sentence without adequately familiarizing himself with the case.  *Id.* at 20.

Respondent concedes that the Petition is timely and properly exhausted as to all grounds except Ground One to the extent Petitioner alleges new facts not raised or before the trial court.  ECF 14 at 21.  Upon careful review, this Court concludes that none of Petitioner's grounds rises to the level of a federal constitutional violation warranting federal habeas corpus relief.

## **STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(d)(2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a state

prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* 571 U.S. 12*,* 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Burt*, 571 U.S. at 18-19 (standard for reviewing claims of legal error by state courts is "highly deferential").  This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Id*.

This highly deferential standard carries special force in habeas cases asserting ineffective-assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[5]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n.35 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "'If this standard is difficult to meet'—and it is—'that is because

---

[5] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) sets forth a two-prong test used to analyze ineffective assistance of counsel claims. First, a petitioner must establish counsel's performance was deficient such that it fell outside of the wide range of reasonable professional assistance of attorneys in criminal cases. *Id*. at 689. Second, a petitioner must establish that "but for" counsel's deficient performance, there is a "reasonable probability" that the outcome would have been different. *Id*. at 694.

it was meant to be.'" *Id*. at 16 (quoting *Harrington*, 562 U.S. at 102).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Id*. (quoting *Harrington*, 562 U.S. at 102).

Finally, when reviewing state-court decisions on habeas review, if a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide the relevant rationale" and "presume that the unexplained decision adopted the same reasoning."  *Wilson v. Sellers*, __ U.S. __, 138 S.Ct. 1188, 200 L.Ed.2d 530 (2018).

## <u>EXHAUSTION OF STATE-COURT REMEDIES</u>

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the

petitioner "fairly presents" his claim in each appropriate state court, alerting

that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard*

*v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner must "do more than

scatter some makeshift needles in the haystack of the state court record"; a

reasonable reader should be able to understand the factual and legal

bases for the claim.  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th

Cir.2005) (quotations and citations omitted).

When a petitioner fails to properly exhaust a federal claim in state

court, and it is obvious that the unexhausted claim would now be

procedurally barred under state law, the claim is procedurally defaulted.

*Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas

courts are precluded from reviewing the merits of procedurally defaulted

claims unless the petitioner can show either (1) cause for the failure to

properly present the claim and actual prejudice from the default, or (2) that

a fundamental miscarriage of justice would result if the claim were not

considered.  *Id*. at 1302, 1306.  A fundamental miscarriage of justice exists

"where a constitutional violation has probably resulted in the conviction of

one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir.

2010).  To state a credible claim of actual innocence, a petitioner must

present new reliable evidence that was not presented at trial showing that

"it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." *Upshaw v. Singletary,* 70 F.3d 576, 578-579 (11th Cir. 1995) (citations omitted).  This means that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Alderman v. Zant,* 22 F.3d 1541, 1549 (11th Cir. 1994) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)).

## DISCUSSION

I. **Ground One:  The trial court did not erred for failing to conduct a *Nelson* Hearing**.

Petitioner argues that the trial court's failure to conduct a *Nelson* hearing and the court's "talking him out of a Nelson hearing twice" entitles him to federal habeas corpus relief.  ECF No. 1 at 6. He goes on to argue

that had the court conducted a *Nelson* hearing, "prior connections with the [Assistant Public Defender] including prior sexual escapades when [Petitioner] was a juvenile" would have been brought to light.  *Id.*  The Respondent contends that Petitioner has not exhausted his state-court remedies with respect to new allegations of additional facts not previously disclosed or before the state court, *i.e*., allegations of prior sexual contact with the APD and the court's "talking him out of" a *Nelson* hearing twice. ECF No. 14 at 21.  This Court agrees that Petitioner failed to exhaust his state-court remedies with respect to these new factual allegations, thus they are not cognizable on federal habeas review.  Furthermore, Petitioner has failed to show either cause for the failure to properly present this claim and actual prejudice, or a fundamental miscarriage of justice for these procedurally defaulted claims.

Nevertheless, Petitioner did raise the failure of the trial court to conduct a *Nelson* hearing in his first direct appeal.  ECF No. 14-3 at 3. The 1st DCA rejected the argument, affirming the convictions and reversing the sentences on the grounds that the trial court erred by not making a new offer of counsel prior to sentencing. *See Duncan v. State*, 76 So.3d 1119 (Fla. 1st DCA 2011) (per curiam) and ECF No. 14-12 at 42.

Under *Nelson*, trial courts are required to make certain inquiries when

an indigent defendant expresses a desire to discharge his court-appointed counsel. *Nelson v. State,* 274 So. 2d 256 (Fla. 4th DCA 1973).   If incompetency of counsel is the reason, the trial court must make a sufficient inquiry to determine if counsel is rendering ineffective assistance. *Id.* at 258. This is, however, a requirement of state law.  It is not a federal constitutional matter.  Because Petitioner does not raise a federal constitutional claim here, the claim is not cognizable in federal habeas review.  *See Ortiz v. McNeil,* Case No. 3:09-cv-563 2010 Dist. LEXIS 132265, at *12-13, 2010 WL 4983599 (M.D. Fla. Dec. 2, 2010); 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  *Engle v. Isaac*, 456 U.S. 107 (1982); *Smith v. Phillips*, 455 U.S. 209 (1982).  Section 2254 is explicit that a federal court is to entertain an application for a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  *See Wainwright v. Goode*, 464 U.S. 78, 83-84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983).

The Supreme Court has not established a procedure for use where an indigent criminal defendant wants another lawyer.  *See, e.g., United*

*States v. Garey,* 540 F.3d 1253, 1262 (11th Cir. 2008). "Although the *Sixth Amendment* guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice. . . . In practical terms, then, defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves." *Id.* A defendant must show good cause–a fundamental problem that would lead to an apparently unjust verdict–in order to demand a different appointed lawyer. *Id.* (citing *Thomas v. Wainwright,* 767 F. 2d 738 (11th Cir. 1985) and *United States v. Young,* 482 F. 2d 993, 995 (5th Cir. 1973)).

The record shows that the trial court discussed the difference between a *Nelson* hearing and a *Faretta* hearing with Petitioner. ECF No.14-1 at 70-71. The court explained that a *Nelson* hearing is not appropriate in situations where the defendant seeks to represent himself, as was the case here. *Id.* In a *Nelson* hearing, rather, the defendant requests substitute counsel, not a waiver of his right to counsel. *Id.*

Notably, Petitioner never requested the assistance of counsel prior to sentencing, even though the court appointed the public defender as standby counsel in the event Petitioner changed his mind about representing himself. *Id.* at 61. The record clearly reflects that Petitioner was quite adamant, even up to the commencement of his trial, that he did

not want a lawyer from the Public Defender's Office representing him. *See* ECF No. 14-2 at 4. Accordingly, the state courts' application of *Faretta* (and not *Nelson*) was objectively reasonable.

Petitioner's *Nelson* challenge (Ground One) should be denied.

## II.    Grounds Two, Three, Four and Seven: Petitioner's ineffective assistance of counsel claims have not merit.

Petitioner contends that his counsel was constitutionally deficient on four grounds.  ECF No. 1. First, Petitioner argues that trial counsel failed to request a competency hearing during the *Faretta* hearing held on Plaintiff's *pro se* motion to represent himself (Ground Two).  ECF No. 1 at 8.[6] Second, Petitioner says trial counsel failed to investigate the defense theory of "not guilty by reason of insanity" (Ground Three).  *Id.* at 9. Third, Petitioner argues that appellate counsel failed to include "missing parts" of the transcript of the hearing held on July 26, 2010, in the record on appeal

---

[6] Notably, the trial court examined Petitioner about his mental health, and Petitioner stated that, except for being treated for depression, he had not suffered any psychiatric problems, had no suicide attempts, had no attempts to harm others, and had not been "Baker Acted".  ECF No. 14-1 at 45-46. After a thorough examination of Petitioner, the court concluded, "I've personally observed Mr. Duncan and his appearance and his demeanor, and in addition to the answers that he's given me, I'm relying upon the observations that I made of him, and I'm going to allow Mr. Duncan to represent himself, and I will take and appoint the Public Defender's Office to represent him as stand-by counsel."  ECF No. 14-1 at 61. The "competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399 (1993) (emphasis in original).

(Ground Four). *Id.* at 11. And fourth, Petitioner says that appellate counsel failed to include Petitioner's motion for a *Nelson* hearing in the record on appeal (Ground Seven). *Id.* at 21.

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland*, 466 U.S. at 690). Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13. The reasonableness of counsel's conduct must

be viewed as of the time of counsel's conduct. *See Maryland v. Kulbicki*, 136 S.Ct. 2, 4, 193 L.Ed.2d 1 (2015) (citing *Strickland*, 466 U.S. at 690).

To demonstrate prejudice under *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the

Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. *Strickland*, 466 U.S. at 697.

The undersigned finds Petitioner's ineffective assistance of counsel claims to be wholly without merit as discussed below.

### A. Ineffective Assistance of Trial Counsel.

With respect to the claim of ineffective assistance of *trial counsel*, Petitioner represented himself at trial at his own request. As the trial court informed him when he made the request, Petitioner cannot now claim ineffective assistance of trial counsel when he "knowingly and intelligently" waived his right to be represented by the public defender.  ECF No. 14-1 at 55-56, 64. As the Supreme Court explained in *Faretta*, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" 422 U.S. at 834 n.46.

In his *pro se* motion to represent himself, Petitioner states that he "knowingly and intelligently" wished to make a "clear and unequivocal declaration that" he wants to "dispense with assistance of Public Defender" and represent himself. ECF No. 14-1 at 75 (citing *Faretta*).  During the *Faretta* hearing, Petitioner was adamant that he wanted to proceed to trial without any assistance from the public defender, *id*. at 60-61, arguing that

he had a constitutional right to self-representation. *Id.* at 52. After

extensive questioning and warnings about the dangers of proceeding *pro*

*se*, the trial court concluded that Petitioner had "knowingly and intelligently"

waived his right to counsel and allowed Petitioner to proceed without the

assistance of the Public Defender's Office. *Id.* at 64.

The court, nevertheless, ordered the public defender to represent

Petitioner as standby counsel in the event Petitioner changed his mind,

which he did not. ECF No. 14-1 at 66. The court renewed its offer of

counsel on the morning of trial, and Petitioner declined. ECF No. 14-2 at 4.

The record clearly establishes that Petitioner understood the risks and

disadvantages of self-representation and that he wanted to proceed without

the assistance of counsel anyway. *See Faretta* hearing, ECF No. 14-1 at

35-73.

With respect to Petitioner's argument that his court-appointed counsel

failed him by not raising his competency during the *Faretta* hearing or at

sentencing on remand, the Court concludes that the state courts' treatment

of these claims was objectively reasonable.

Under the Due Process Clause, a state may not try a person who is

mentally incompetent. *See Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct.

896, 43 L.Ed.2d 103 (1975). To be competent to stand trial, a defendant

must demonstrate "a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).  Counsel is not required to request a competency hearing in every instance in which a defendant has exhibited signs of mental illness. *See Drope*, 420 U.S. 162 at 180, 95 S.Ct. 896, 43 L.Ed.2d 103. ("There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.")

However, "[c]ounsel's failure to move for a competency hearing violates the defendant's right to effective assistance of counsel when 'there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.'" *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001)).

Thr Court concludes that since there was no evidence in the record that Petitioner lacked competency during the *Faretta* hearing, counsel did

not err by failing to request a competency hearing at that time. Moreover, the trial court conducting the *Faretta* hearing found Petitioner competent to waive his right to counsel, and the postconviction court found no evidence in the transcripts of the *Faretta* hearing to suggest that Petitioner was incompetent at that time. See ECF No. 14-1 at 45-46 & 61 and ECF No. 14-25 Sealed Documents at 248-50.  Accordingly, Petitioner cannot establish prejudice.

Thereafter, Petitioner represented himself. Any error at sentencing was cured when the 1st DCA reversed Petitioner's sentences and ordered a competency hearing on remand.  On remand, Petitioner was found competent to be sentenced, and he requested the assistance of counsel for sentencing.  The state court's treatment of Petitioner's ineffective assistance claim regarding his competency, therefore, did not violate clearly established federal law.

Finally, Petitioner waived his right to *trial counsel*. Thus, he has no claim for ineffective assistance claim against trial counsel. Grounds Two and Three should be denied.

### B. *Ineffective Assistance of Appellate Counsel*.

With respect to his claims of ineffective assistance of *appellate counsel*, Petitioner prevailed twice on appeal. He cannot, therefore, establish prejudice under the second prong of *Strickland*.

Petitioner complains that appellate counsel failed to include "missing parts" of the transcript from the July 26, 2010 hearing (Ground Four) as well as his *pro se Nelson* Motion in the record on appeal (Ground Seven). Not only do these claims fail to present a constitutional violation warranting federal habeas relief, but the record also squarely refutes Petitioner's asserted factual basis for this claim.  The entire certified transcript of the hearing complained-of and Petitioner's motion were included in the record on appeal. *See* ECF No. 14-1 at 88-93, 74-76.  Moreover, the entire transcript of the *Faretta* hearing was included.  *Id*. at 35-73.  Even Petitioner's postconviction objection on *Nelson* grounds was included in the record.  ECF No. 14-1 at 193-98.

 Accordingly, Petitioner fails to establish either deficient performance by appellate counsel or prejudice.[7]  Having failed to satisfy either prong of

---

[7] To the extent that Petitioner argues that the transcript and motion should have been included in the record on the second direct appeal of his sentences, they are simply not relevant to that appeal.

*Strickland*, Petitioner's claims for ineffective assistance of appellate counsel (Grounds Four and Seven) should be denied.

### III.    Ground Five: The trial court did not err in failing to renew offer of counsel before every pretrial hearing and during the dvidentiary portion of trial.

In Ground Five, Petitioner argues that the trial court should have renewed its offer of counsel at each stage of the pretrial proceedings as well as during the evidentiary portion of the trial. ECF No. 1 at 19. This claim fails to rise to the level of a constitutional violation warranting federal habeas relief. As the Eleventh Circuit Court of Appeals recently pointed out, "[t]here is no clearly established Supreme Court law on when the Sixth Amendment requires an additional waiver of counsel, just that there are times when it is necessary." *McClain v. Sec'y, Dep't of Corr.*, Case No. 20-11209, 2009 U.S. App. LEXIS 14156, *10-11 (11th Cir. May 13, 2021).

The Supreme Court has held the formal procedures required to waive counsel depend on the stage of the trial. *Patterson v. Illinois*, 487 U.S. 285, 298-99, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). The Court "defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel." *Id*. at 298. "The Court held that the procedures range from none, for a post-indictment photographic

display identification, to a full *Faretta* hearing, for a defendant to waive counsel for a criminal trial." *McClain*, 2021 U.S. App. LEXIS 14156, *10 (citing *Patterson,* 487 U.S. at 298, 108 S.Ct. 2389).

In *Faretta*, the Supreme Court concluded that "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants the accused personally the right to make his defense."  422 U.S. at 819, 95 S.Ct. 2525.  The Court further stated, however, that because a defendant loses many of the benefits associated with the right to counsel when he represents himself, he must "knowingly and intelligently forego those relinquished benefits."  *Id.* at 835, 95 S.Ct. 2525 (quotation marks omitted).  Specifically, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  *Id*. (quotation marks omitted).

In the instant Petition, Petitioner's *pro se* Motion to represent himself makes no request for representation by counsel. *See* ECF No. 14-1 at 74-76. Rather, Petitioner unequivocally states that he "knowingly and intelligently" wants to make a "clear and unequivocal declaration that" he wants to fire his court-appointed counsel and represent himself. *Id*. (*citing Faretta*).

During the *Faretta* hearing, the trial court reviewed the nature of the charges (burglary and arson) against Petitioner as well as the fact that, if the jury convicted him, he could be sentenced to up to life in prison as a Habitual Felony Offender (HFO).  ECF No. 14-1 at 39, 54-57.  The court further informed Petitioner that if he was not sentenced as an HFO, he faced the possibility of thirty-years (30) in prison for each count if convicted. *Id*. at 40.  Petitioner responded that he "understood" and that he was "familiar with the prison system," having represented himself before.  *Id*. The court explained that if he represented himself in this case, he would be at a "severe disadvantage," *id*. at 50, and that his time at the jail law library would be limited. *Id*. at 49. Petitioner responded, "Yes, sir, I am going to be at a disadvantage." *Id*. at 50.  The trial court informed him that the State would pay for his representation, and that counsel would be better able to defend him, negotiate a plea or terms of bail, and protect his constitutional rights.  *Id*. at 52.  Relying on *Faretta*, Petitioner said he knew that the procedural problems presented by self-representation outweighed any perceived advantage he may feel representing himself.  ECF No. 14-1 at 52.

The court went on to explain that counsel would know the rules of procedure and evidence and could prevent evidence from being admitted,

and that it was not wise for Petitioner to represent himself.  *Id.* at 53.  The court informed Petitioner that, if he represented himself, he would be required to abide by the rules of criminal procedure and law and that if he failed to do so, the court could terminate his self-representation.  *Id*. at 54-55.  Petitioner acknowledged that he understood all of these things.  *Id*. at 55. The court also warned Petitioner that if he represented himself and was convicted, he could not seek a new trial on the basis of his lack of legal knowledge nor could he bring an ineffective assistance of counsel claim. *Id.* at 55-56. Petitioner said, "Yes, sir, I understand." *Id.* at 56.

After questioning him about the disadvantages of self-representation and the advantages of representation by counsel, as well as the nature of the charges against him and the possible sentences, the court asked Petitioner if he still wanted to represent himself.  *Id*. at 60-61.  Petitioner said, "Yes, sir. I want to represent myself."  *Id*. at 61.  Finding that Petitioner "knowingly and intelligently" waived his right to counsel, the court allowed him to represent himself.  *Id*. at 64.

Nevertheless, the trial court ordered the public defender to serve as Petitioner's standby counsel in the event he later changed his mind about representing himself.  *Id.* at 61.  The record reflects that standby counsel was present and available to Petitioner at pretrial hearings.  See ECF No.

14-1 at 35-73, 80-81, 85, 104-05 & 116-17. At no time during these

proceedings did Petitioner state that he wanted the public defender to

represent him.  *See id*.

Finally, prior to jury selection and trial, the court renewed its offer of

counsel:

> The Court:  Again, Mr. Duncan, I will offer you the services of
> the public defender to represent you in this case if that is what
> you want to do at this point.  If you want the public defender to
> represent you, we'll reappoint the public defender.
>
> [Petitioner]: He's already out to get me. I'm sure everybody he
> works with he's talked to.
> …
>
> The Court:   So you don't want a public defender to represent
> you?
>
> [Petitioner]: No, sir.
>
> ECF No. 14-2 at 4.

The record shows that standby counsel was available throughout

once Petitioner invoked his right to self-representation.

In his first direct appeal, the 1st DCA affirmed Petitioner's convictions

but remanded the sentences on the grounds that the sentencing court

should have renewed the offer of counsel prior to sentencing. *Duncan v.*

*State*, 76 So.3d 1119 (Fla. 1st DCA 2011) (per curiam) and ECF No. 14-12

at 42. On remand, the court renewed its offer of counsel and Petitioner

accepted. ECF No. 14-1 at 72.  In his third direct appeal, the 1st DCA

affirmed Petitioner's sentence without a written opinion.  Accordingly, this

Court will look past that decision to the prior written decision, pointing out

the *Feratta* error at sentencing, which was cured on remand.

In sum, Petitioner does not have a constitutional right to a renewed

offer of counsel at all pretrial proceedings and during the evidentiary portion

of trial.  Nonetheless, standby counsel was ready to assist him at any time

throughout.  Petitioner's failure to avail himself of that assistance does not

warrant federal habeas relief.  This Court further concludes that the state

courts' application of *Faretta* was objectively reasonable.  Accordingly,

Petitioner's *Faretta* claims (Ground Five) should be denied.[8]

---

[8] To the extent that Petitioner bases this claim solely upon Fla. R. Crim. P. 3.111(d)(5), which is based upon an interpretation of Section 16 of the Florida Constitution, federal habeas review is precluded.  Rule 3.111(d)(5) provides that "if a waiver of counsel is accepted at any stage of the proceedings, the offer must be renewed at each subsequent stage of the proceedings at which the defendant appears without counsel." Fla. R. Crim. P. 3.111(d)(5); *see also, Traylor v. State*, 596 So.2d 957 (Fla. 1992).  A violation of a state rule or law is not itself a violation of the U.S. Constitution. *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983), *reh'g denied*, 465 U.S. 1014, 104 S.Ct. 1017, 79 L.Ed.2d 247 (1984).  The writ of habeas corpus was not enacted to enforce state-created rights.  *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000). Even when a petition involving state law is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force.  *See Willeford v. Estelle*, 538 F.2d 1194, 1196-97 (5th Cir. 1976).

IV.    **Ground Six: The sentencing court's alleged lack of familiarity with Petitioner's case to impose sentence does not entitle Petitioner to federal habeas relief.**

In Ground Six, Petitioner argues that the sentencing court erred in sentencing him "without an adequate demonstration on the record of knowledge of the case where the sentencing judge was not the trial judge or the original sentencing judge." ECF No. 1 at 20.  This argument also does not rise to the level of a constitutional violation warranting federal habeas corpus relief.  Respondent contends that this claim is procedurally defaulted as it was not preserved for appeal by counsel at Petitioner's sentencing on remand.  ECF No. 14 at 58.[9]

Florida Rule of Criminal Procedure 3.200(c) provides that a successor judge should "be acquainted with what transpired at trial, or the facts, including any plea discussions, concerning the plea and the offense" so that the "imposition of the sentence is his act of independent judgment, not mere reliance on the decision of the original judge."  *Watson v. State*, 820 So.2d 1057, 1059 (Fla. 4th DCA 2002).  To the extent that Petitioner

---

[9] Petitioner raised this issue in his second direct appeal.  ECF No. 14-10. The 1st DCA ruled the issue "moot" since the State conceded the issue of Petitioner's competency at the time of sentencing, which was the only other issue raised on appeal.  *See Duncan v. State*, 115 So.3d 1121 (Fla. 1st DCA 2013) (per curiam) and ECF 14-12 at 58-59.

basis this claim solely on state law, it is not subject to federal habeas review.

In *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183 (11th Cir. 2009), the petitioner claimed he was denied due process when he was resentenced by a successor judge who failed to conduct an evidentiary hearing to permit the introduction of additional mitigating evidence.  The Eleventh Circuit Court of Appeals found that argument inconsistent with past cases in which the Court found that a substitute judge who read the trial record and transcripts was sufficiently familiar with a case to sentence a defendant.  *Ferguson*, 580 F.3d at 1211 (citing *United States v. Dowd*, 451 F.3d 1244, 1256 (11th Cir. 2006) and *United States v. Casas*, 425 F.3d 23, 56 (1st Cir. 2005) (noting that "a replacement judge enjoys broad discretion to determine whether he can perform sentencing duties in a case he did not try.")). The Eleventh Circuit stated that "it is doubtful that there is a federal constitutional principle requiring the sentencing judge to have heard the evidence before imposing sentence" in light of the "broad discretion a sentencing judge enjoys in determining whether he can perform sentencing duties in a case he did not try." *Ferguson*, 580 F.3d at 1211 (internal quotation marks omitted) (citing *United States v. McGuinness*, 769 F.2d 695, 696 (11th Cir. 1985) (per curiam)).  As a result,

the petitioner's claim in *Ferguson* "likely involve[d] solely state law issues that could not serve as a basis for a federal habeas claim."  580 F.3d at 1211-12. (citing *Hendrix v. Sec'y, Fla. Dep't of Corr.*, 527 F.3d 1149, 1153 (11th Cir. 2008) (per curiam) (noting that a "violation of state law is not a ground for federal habeas relief")).

Here, too, Petitioner's challenge that the sentencing court did not have sufficient familiarity with the case to sentence him presents a state law issue that cannot serve as a basis for a federal habeas claim. Ground Six should, therefore, be denied.

## CERTIFICATE OF APPEALABILITY

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## **CONCLUSION**

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No.1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 20th day of August 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**[10]

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy**

---

[10] Upon review of the Florida DOC online inmate locator, it appears that Petitioner is currently confined at the Tomoka Correctional Institution. The Clerk is directed to forward a copy of this Report and Recommendation to this address and Petitioner's address of record with the Court.

thereof.  **<u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.